**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

                                        SUPERIOR COURT OF NEW JERSEY
                                        APPELLATE DIVISION
                                        DOCKET NO. A-2012-12T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

GUILERMO SANTAMARIA, a/k/a WILLIAM
SANTAMARIA, GHILERMO SANTAMARIA,

     Defendant-Appellant.

_____

          Argued February 3, 2016 — Decided June 30, 2017

          Before Judges Fuentes, Kennedy and Gilson.

          On appeal from the Superior Court of New
          Jersey, Law Division, Middlesex County,
          Indictment No. 10-10-1436.

          Frank J. Pugliese, Assistant Deputy Public
          Defender, argued the cause for appellant
          (Joseph E. Krakora, Public Defender, attorney;
          Mr. Pugliese, of counsel and on the brief).

          Nancy A. Hulett, Assistant Prosecutor, argued
          the cause for respondent (Andrew C. Carey,
          Middlesex County Prosecutor, attorney; Ms.
          Hulett, of counsel and on the brief).

PER CURIAM

     On October 1, 2010, a Middlesex County grand jury returned

Indictment No. 10-10-1436, charging defendant, formerly a middle

school science teacher, with various counts of sexual assault and misconduct in office, based upon his alleged sexual encounters with a student between 1997 and 2002. Following a jury trial, he was found guilty of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a), (count one), two counts of second-degree sexual assault, N.J.S.A. 2C:14-2(c), (counts two and three), and two counts of second-degree official misconduct, N.J.S.A. 2C:30-2 (counts four and five). Defendant was sentenced to an aggregate prison term of twenty years with approximately five years and eleven months of parole ineligibility. Defendant now appeals.

For reasons set forth hereinafter, we reverse and dismiss one of the official misconduct counts (count four), and, further, we reverse the remainder of defendant's convictions and remand for a new trial.

I.

The following facts are gleaned from the testimony elicited at trial. We note at the outset that the events that formed the basis of the charges against defendant are alleged to have occurred between September 1, 1997, and July 4, 2004, and that the indictment itself was handed up by the grand jury on October 1, 2010. Further, the trial record itself is devoid of any substantive physical evidence, including text messages, DNA evidence, or any admissions from defendant. The State's case was

based primarily on the testimony of H.B., who, at the time of trial, was twenty-seven years of age.[1]

In September 1997, defendant was a science teacher at a middle school, when he met H.B., an eighth-grade student. At that time, H.B., who was born in July 1984, was thirteen years old, and defendant was forty-three years old. That same year, after H.B. gave defendant a picture of herself with her phone number written on the back, the two began speaking on the telephone "once or a few times a week."

In the spring of 1998, H.B. joined defendant's after-school Greek and Latin club, and H.B. and defendant began conversing through internet chatrooms. Defendant also told H.B. around that time that he "like[d] [her] more than just a friend." At no point before or after H.B.'s involvement with the Greek and Latin club, was she ever enrolled in a class he taught.

H.B. graduated from eighth grade in the spring of 1998. That summer, defendant regularly saw H.B. outside of school. Shortly after H.B.'s eighth grade graduation, but prior to H.B.'s fourteenth birthday, H.B. and defendant kissed for the first time. Around the same time, their telephone conversations became more "intimate," and H.B. testified that she and defendant would

---

[1] To protect privacy interests, we use initials to identify the victim and witnesses.

masturbate while on the phone. Shortly after H.B.'s fourteenth birthday on July 5, 1998, she and defendant had sexual intercourse for the first time. According to H.B., that encounter occurred off school property in a park.

In September 1998, H.B. entered high school, and their relationship continued. H.B. testified that she knew defendant was married and that he was dating two other women, R.M. and M.E. R.M. was also a middle school teacher in the district, while M.E., who lived in California, maintained an online relationship with defendant.

In January 1999, M.E.'s husband discovered information on their family computer that referenced defendant and H.B. He contacted New Jersey police to inform them of defendant's apparent "cyber-relationship" with his wife and defendant's connection with H.B. However, he called the police again the following day recanting his previous statement.

H.B. and defendant continued their relationship throughout H.B.'s four years of high school. They spoke nearly every day and saw each other at least three times per week. They kept their relationship a secret because defendant told H.B. "people would not understand [it]." According to H.B., they maintained a "dominance and submissive relationship," where defendant was the

dominant partner and she was the submissive partner, and she would perform whatever sexual acts defendant requested.

In September 2001, R.M. accessed defendant's e-mail account without permission, and she discovered a picture of H.B. wearing a bathing suit top while seated in defendant's car. She confronted defendant about the picture and, further, notified the police and the Division of Youth and Family Services (DYFS)[2] about her suspicions that defendant and H.B. were having an "illicit" relationship. R.M. also spoke with H.B., who denied any type of relationship with defendant. DYFS contacted school officials, defendant, and H.B.; however, both H.B. and defendant denied any type of relationship. DYFS classified R.M.'s referral as "unsubstantiated."[3]

In the spring of 2002, H.B. graduated from high school. She turned eighteen in early July 2002, and in August 2002, she left New Jersey to attend an out-of-state university. H.B. testified that she and defendant planned to continue their relationship while H.B. was at college, and to eventually marry and start a family.

---

[2] Effective June 29, 2012, DYFS was renamed the Division of Child Protection and Permanency (DCPP). N.J.S.A. 9:3A-10.

[3] We do not comment on the admissibility of this evidence, as it was neither briefed nor argued by the parties.

In the winter of 2002, however, while at college, H.B. began dating a fellow college student. Around the same time, H.B.'s parents received a letter from DYFS regarding R.M.'s prior allegations. H.B.'s parents also saw e-mails from defendant when H.B. was home during college winter break. Nevertheless, when confronted, H.B. denied any relationship with defendant.

H.B. and defendant's relationship was "on and off" during H.B.'s freshman and sophomore years. H.B. testified that on one occasion, while on college recess, she returned to her former middle school to visit her old teachers, including defendant. H.B. recalled performing oral sex on defendant inside a room adjoining defendant's classroom.

Thereafter, their relationship deteriorated. In the summer of 2006, after H.B. had graduated from college, defendant sent H.B. an e-mail ending their relationship. Almost three years later, in the spring of 2009, H.B. told her family about her relationship with defendant. H.B.'s mother contacted the police and Investigator Michael Daniewicz of the Middlesex Prosecutor's Office called H.B. H.B. declined to pursue the matter at that time. However, H.B. had her sister contact Daniewicz a year later, in the spring of 2010. At that time, H.B. gave a statement and agreed to help prosecute defendant.

Daniewicz obtained a 4C intercept, which authorized him to record conversations between H.B. and defendant. H.B. called defendant and left him several voice messages on May 17, 2010, and May 18, 2010. Defendant returned H.B.'s calls on May 18, 2010, and they agreed to meet for dinner that night. Daniewicz obtained another 4C intercept and equipped H.B. with a body wire to wear during the dinner.

During the course of his investigation, Daniewicz interviewed H.B.'s parents; defendant's co-worker, C.G.; R.M.; M.E.; M.E.'s husband; and defendant's ex-wife, B.S. C.G. recalled that defendant told him that he was in a relationship with H.B. while she was in college.

B.S., through her lawyer, provided Daniewicz with a compact disc (CD) containing seventy-one photographs of H.B. and defendant that she had discovered in her backyard in 2002. At trial, the State admitted more than forty of these photographs into evidence and presented them to the jury during B.S.'s direct examination. All of those photographs were taken after H.B.'s eighteenth birthday. The same photographs, along with several additional photos, were again presented to the jury during H.B.'s testimony.[4]

---

[4] The record is not clear as to exactly how many photographs were admitted at trial. However, it is clear that more than fifty photographs were admitted into evidence and presented to the jury, with at least ten of those photographs shown twice.

The photographs depicted H.B. naked and engaged in various sexual acts with defendant inside defendant's marital home. Based on the appearance of an air conditioner and a remodeled shower in the pictures, B.S. estimated that the photographs were taken in late July 2002. H.B. agreed that the photographs were taken after her eighteenth birthday, but before she left for college in August 2002.

## II.

Defendant now appeals his conviction and argues as follows:

POINT I

THE PHOTOGRAPHS DEPICTING DEFENDANT AND H.B. ENGAGED IN SEXUALLY EXPLICIT ACTS AT A TIME WHEN H.B. WAS AN ADULT WERE IRRELEVANT TO THE CHARGES AGAINST DEFENDANT AND PURSUANT TO [N.J.R.E.] 401 AND [] 402 SHOULD NOT HAVE BEEN ADMITTED INTO EVIDENCE. FURTHERMORE, WHATEVER MINIMAL PROBATIVE VALUE THE PHOTOGRAPHS MAY HAVE HAD, WAS FAR OUTWEIGHED BY THEIR GROSSLY PREJUDICIAL IMPACT AND PURSUANT TO [N.J.R.E.] 403 SHOULD NOT HAVE BEEN PUBLISHED TO THE JURY. MOREOVER, THE SAME PHOTOGRAPHS WERE AKIN TO THE ADMISSION OF BAD ACTS AND SHOULD HAVE BEEN STRICKEN PURSUANT TO [N.J.R.E.] 404B. THE ERROR WAS COMPOUNDED BY THE COURT'S FAILURE TO PROVIDE A LIMITING INSTRUCTION AND BY THE PROSECUTOR'S SUMMATION. AS A CONSEQUENCE, DEFENDANT WAS DENIED HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL. (U.S. CONST. AMENDS. V, VI AND XIV; N.J. CONST. [], ART. [I], [¶]. 1, 9 AND 10.) (Not Raised Below).

POINT II

THE CONVICTION OF OFFICIAL MISCONDUCT STEMMING FROM COUNT FOUR MUST BE VACATED AND THE CHARGE DISMISSED FOR LACK OF JURISDICTION. INASMUCH AS SOME OF THE DATES ALLEGED IN THE OFFICIAL MISCONDUCT CHARGE CONTAINED IN COUNT FIVE ARE JURISDICTIONALLY INFIRM AS WELL, THE CONVICTION STEMMING THEREFROM MUST ALSO BE VACATED AND THE CHARGE DISMISSED. (Not Raised Below).

POINT III

ABSENT A QUID PRO QUO AND NOTWITHSTANDING THAT ONE OR BOTH OF THE PARTICIPANTS IS A PUBLIC SERVANT, CONSENSUAL SEXUAL CONDUCT BY TWO ADULTS ON SCHOOL PROPERTY DOES NOT CONSTITUTE THE CRIME OF OFFICIAL MISCONDUCT FOR WHICH A POTENTIAL MAXIMUM SENTENCE OF TEN YEARS WITH A FIVE YEAR PAROLE BAR COULD BE IMPOSED. (Partially Raised Below).

POINT IV

THE STATE COMMITTED REVERSIBLE ERROR BY COMMENTING IN SUMMATION ON DEFENDANT'S SILENCE WHEN H.B., ACTING AS AN AGENT OF THE POLICE, CONFRONTED HIM WITH HER ACCUSATIONS DURING THEIR RECORDED DINNER CONVERSATION. U.S. CONST., AMENDS. V, XIV. (Not Raised Below).

POINT V

THE COURT'S INSTRUCTION TO THE JURY REGARDING THE DESTRUCTION OF POLICE NOTES BY M.D. WAS INFIRM AND THEREFORE VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

We first consider the statute of limitations as it relates to count four, charging defendant with official misconduct. Because all the allegations in that count relate to activity that

took place on or before July 4, 2002, and the indictment in this matter was handed up on October 1, 2010, we conclude that the applicable seven-year statute of limitations requires the dismissal of that charge. Next, we consider the State's introduction of more than fifty sexually graphic photographs, taken after H.B. turned eighteen, for the alleged purpose of establishing the existence of a sexual relationship between them when she was a minor. We conclude that the admission of such a large number of sexually graphic photographs was substantially more prejudicial than probative. Accordingly, we are compelled to reverse the remainder of defendant's convictions and remand for a new trial. Consequently, defendant's remaining arguments are moot in light of our holding; however, we do add some commentary to guide the new trial.

A. The Statute of Limitations for Official Misconduct.

Defendant argues that count four of the indictment, charging him with official misconduct, was barred by the statute of limitations. We agree.

A criminal statute of limitations "balances the right of the public to have persons who commit criminal offenses charged, tried, and sanctioned with the right of the defendant to a prompt prosecution." State v. Diorio, 216 N.J. 598, 612 (2014) (citing State v. Zarinsky, 75 N.J. 101, 106-07 (1977)). "The statute of

limitations for a criminal offense is an absolute bar to prosecution." Id. at 613 (citing State v. Short, 131 N.J. 47, 55 (1993)).

The statute of limitations for official misconduct is seven years. N.J.S.A. 2C:1-6(b)(3). "Time starts to run on the day after the offense is committed . . . ." N.J.S.A. 2C:1-6(c). Count four charged defendant with official misconduct from the time H.B. started eighth grade, September 1, 1997, until the day before she turned eighteen, in July 2002. Defendant was indicted on October 1, 2010. Consequently, none of the acts alleged in count four occurred within seven years of the indictment.

Prosecution for official misconduct "must be commenced within seven years after the commission of the offense . . . ." N.J.S.A. 2C:1-6(b)(3).

> An offense is committed either when every element occurs or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated. Time starts to run on the day after the offense is committed . . . .
>
> [N.J.S.A. 2C:6(c).]

Criminal offenses can either be "discrete acts" or "continuing offenses." Diorio, supra, 216 N.J. at 614. A discrete act is "one that occurs at a single point in time" while a continuing offense "involves conduct spanning an extended period

of time and generates harm that continues uninterrupted until the course of conduct ceases." Ibid. "An offense should not be considered a continuing offense 'unless the explicit language of the substantive offense compels such a conclusion, or the nature of the crime involved is such that [the legislative body] must have assuredly have intended that it be treated as a continuing one.'" Ibid. (quoting Toussie v. United States, 397 U.S. 112, 114-16, 90 S. Ct. 858, 860-61, 25 L. Ed. 2d 156, 161-62 (1970)).

In State v. Weleck, our Supreme Court recognized that an indictment for official misconduct "may allege a series of acts spread across a considerable period of time." 10 N.J. 355, 374 (1952). Because the statute of limitations at that time was two years, the Court held that "[i]f any of the acts fall within the two years next preceding the return of the indictment, prosecution is not barred." Ibid.

In Weleck, a borough attorney entered into an illegal agreement with a private citizen on March 2, 1949. Id. at 364. The attorney agreed to use his influence and office to help enact a particular ordinance in exchange for $15,000. Id. at 365. After the ordinance passed, the attorney made two demands on the citizen for payment. Ibid. The first demand occurred on July 7, 1949, and the second on July 14, 1949. Ibid. An indictment returned

on June 26, 1951, charged defendant with official misconduct.  Id. at 364-65.

Though the official misconduct charge encompassed acts that took place outside the statute of limitations, i.e., the March 2, 1949 agreement, the Court held that prosecution was not barred.  The Court stated:

> When the defendant demanded money of Lubben and entered into a corrupt agreement with him, it constituted a breach of those duties and the breach continued so long as the defendant held office and persisted in his efforts to obtain the money from him.  Since the indictment alleges that the defendant while still borough attorney made a demand upon Lubben on July 7, 1949, and again on July 14, 1949, it is readily apparent that the defendant was charged with acts of misconduct within two years of the return of the indictment on June 26, 1951, and, accordingly, that the statute of limitations does not preclude prosecution of the offense.
>
> [Id. at 374.]

The indictment in this case, as we have noted, was returned on October 1, 2010.  Count four charged defendant with official misconduct from the time H.B. started eighth grade, September 1, 1997, until the day before she turned eighteen, in July 2002. Because none of the acts alleged in count four could have occurred within the seven years preceding the return of the indictment — October 1, 2003, to October 1, 2010 — it is barred by the statute of limitations.

Count five, in contrast, is not barred by the statute of limitations. Count five charged defendant with official misconduct for engaging in sexual relations with H.B. in a room adjoining his science classroom at the middle school during her freshman or sophomore year of college. H.B. entered college in 2002, thus she was a freshman during the 2002-2003 academic year and a sophomore during the 2003-2004 academic year. Since the act alleged in count five could have occurred within the seven years preceding the return of the indictment — October 1, 2003 to October 1, 2010 — prosecution is not barred by the statute of limitations. Though count five is not barred by the statute of limitations, the trial court erred in denying defendant's motion for a judgment of acquittal on count four.

B. Introduction of Photographs

Defendant contends that the admission of over fifty sexually explicit photographs of H.B. and defendant, taken after H.B. turned eighteen years old, denied him a fair trial. He argues the trial court should have sua sponte excluded the photographs under N.J.R.E. 401 and N.J.R.E. 402 as irrelevant. Alternatively, defendant asserts that, even if the photographs were relevant, they should have been excluded under N.J.R.E. 404(b) or under N.J.R.E. 403. Defendant also argues that this error was compounded by the absence of a limiting instruction at the time the

photographs were admitted into evidence and during the court's final charge to the jury.

We examine this issue pursuant to the plain error standard because appellant did not raise an objection before the trial court. Under this standard, we reverse only if the unchallenged error was "clearly capable of producing an unjust result." R. 2:10-2.

As we explain hereinafter, we find the admission of over fifty sexually explicit photographs of defendant and H.B. had minimal probative value that was substantially outweighed by the risk of undue prejudice and further, constituted the needless presentation of cumulative evidence under N.J.R.E. 403 and N.J.R.E. 404(b). In addition, the failure of the court to give to the jury clear instructions on the limits of such evidence compounded the undue prejudice to defendant and requires a reversal of defendant's convictions and a remand for a new trial.

N.J.R.E. 401 defines "relevant evidence" as evidence "having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." To be relevant, evidence must (1) have a tendency to prove or disprove a fact, and (2) the fact to be proved or disproved must be a fact of consequence in the matter. Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, comment 1 on N.J.R.E. 401 (2015). "Probative value 'is

the tendency of the evidence to establish the proposition that it is offered to prove.'" State v. Buckley, 216 N.J. 249, 261 (2013) (quoting State v. Wilson, 135 N.J. 4, 13 (1994)). The second element refers to materiality. "A material fact is one which is really in issue in the case." Ibid. (quoting State v. Hutchins, 241 N.J. Super. 353, 359 (App. Div. 1990)). Thus, a relevancy determination focuses on "the logical connection between the proffered evidence and a fact in issue, i.e., whether the thing sought to be established is more logical with the evidence than without it." Hutchins, supra, 241 N.J. Super. at 358 (citing Manieri v. Volkswagenwerk A.G., 151 N.J. Super. 422, 429-30 (App. Div. 1977), certif. denied, 75 N.J. 594 (1978); State v. Coruzzi, 189 N.J. Super. 273, 302 (App. Div.), certif. denied, 94 N.J. 531 (1983)). The test for relevance is broad and favors admissibility; evidence does not have to be dispositive or even strongly probative to be relevant. Buckley, supra, 216 N.J. at 261; State v. Deatore, 70 N.J. 100, 116 (1976).

Under this broad test, the photographs - considered individually - have some probative value in showing a sexual relationship existed between H.B. and defendant at some point near the time-frame alleged in the indictment. Buckley, supra, 216 N.J. at 261. The material facts at issue in this case were whether defendant committed any acts of sexual penetration with H.B. when

16

she was fourteen, fifteen, sixteen, or seventeen. The photographs depicting H.B. and defendant's sexual relationship when she was eighteen were logically connected to whether they also had a sexual relationship when H.B. was underage. It is "more logical" that defendant engaged in acts of sexual penetration with H.B. when she was fourteen, fifteen, sixteen, or seventeen, if they also had a sexual relationship when she was eighteen. Hutchins, supra, 241 N.J. Super. at 359.

Nevertheless, the trial judge should not have permitted the State to introduce over fifty of these photographs under the circumstances of this case; their minimal probative value was substantially outweighed by the risk of undue prejudice and constituted the needless presentation of cumulative evidence. "[R]elevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." N.J.R.E. 403. There is a presumption in favor of admitting relevant evidence, so the factors favoring exclusion under N.J.R.E. 403 must substantially outweigh the probative value of the contested evidence. State v. E.B., 348 N.J. Super. 336, 345 (App. Div.), certif. denied, 174 N.J. 192 (2002).

"The 'more attenuated and the less probative the evidence, the more appropriate it is for a judge to exclude it under N.J.R.E. 403.'" State v. Covell, 157 N.J. 554, 569 (1999) (quoting State v. Medina, 201 N.J. Super. 565, 580 (App. Div.), certif. denied, 102 N.J. 298 (1985)). "[A] court must also consider the availability of other evidence that can be used to prove the same point." Ibid. While proffered evidence's probative value is enhanced by the absence of other evidence, proffered evidence loses some of its probative value if there is other non-inflammatory evidence available to prove the same point. Ibid.

The photographs have minimal probative value due to their attenuation. Both H.B. and defendant's wife, B.S., testified that the photographs were taken in late July or early August 2002, after H.B. turned eighteen. Since defendant was charged with engaging in acts of sexual penetration with H.B. when she was underage, the photographs were taken at least several weeks, if not years, after the alleged crimes occurred. Further, the State had other patently less inflammatory evidence to establish the facts the State now points to as justifying their admission.

Here, there was a wealth of other evidence to prove that H.B. and defendant had a sexual relationship after H.B. turned eighteen. First and foremost, defendant conceded the relationship and defense counsel mentioned it multiple times in his opening

statement.[5]  ("He made a mistake, and his mistake was having a legal, consensual relationship with the alleged victim, [H.B.]"); ("[H.B.'s] allegations come out only after, after she's already in college, when admittedly they were having a legal consensual relationship . . . ."); ("You got to understand that those pictures, those are not a crime, because at that point in time it was a legal consensual relationship that they were involved in. [H.B.] . . . was [eighteen]."). Further, H.B. testified that her sexual relationship with defendant continued after she turned eighteen and went off to college. C.G. also testified that defendant told him that he had a relationship with H.B. while she was in college. In light of the wealth of other, non-inflammatory evidence available to prove that H.B. and defendant had a sexual relationship after H.B. turned eighteen, the introduction of more than fifty sexually explicit photographs was a needless

---

[5] Since defendant conceded having a sexual relationship with H.B. after she turned eighteen, the State cannot justify the introduction of the photographs as rebutting defendant's trial strategy or defense. C.f. State v. Jenkins, 356 N.J. Super. 413, 431 (App. Div. 2003) (if defendant stipulated to the contents of the murder victim's testimony there would be no need to show the potentially prejudicial videotape of the testimony), aff'd on other grounds, 178 N.J. 347 (2004); State v. L.P., 352 N.J. Super. 369, 378 (App. Div.) (defendant could have avoided any prejudicial impact caused by the admission of nude photographs of his body by stipulating that the victim's description of his body features was accurate), certif. denied, 174 N.J. 546 (2002).

presentation of cumulative, inflammatory evidence. <u>Davis</u>, <u>supra</u>, 116 <u>N.J.</u> at 366.

The photographs were also unduly prejudicial. Although graphic or sexually explicit photographs are not per se inadmissible, <u>State v. Micheliche</u>, 220 <u>N.J. Super.</u> 532, 544 (App. Div.), <u>certif. denied</u>, 109 <u>N.J.</u> 40 (1987), they should be excluded when "their probative value is so significantly outweighed by their inflammatory potential as to have a probable capacity to divert the minds of the jurors from a reasonable and fair evaluation of the basic issue of guilt or innocence." <u>State v. Abdullah</u>, 372 <u>N.J. Super.</u> 252, 270-71 (App. Div. 2004) (quoting <u>State v. Sanchez</u>, 224 <u>N.J. Super.</u> 231, 249-50 (App. Div.), <u>certif. denied</u>, 111 <u>N.J.</u> 653 (1988)), <u>aff'd in part rev'd in part on other grounds</u>, 184 <u>N.J.</u> 497 (2005).

In <u>State v. Taylor</u>, we found a videotape of a homicide victim to be cumulative and redundant, but also that "[t]he probative value of such cumulative evidence was far exceeded by its prejudicial effect." 350 <u>N.J. Super.</u> 20, 36 (App. Div.), <u>certif. denied</u>, 174 <u>N.J.</u> 190 (2002). We explained, "the potentially prejudicial effect of observing the victim struggling for life is enormous and substantially outweighs whatever residual or collateral evidential value there remained to the tape's depiction of [the victim's] last words." <u>Id.</u> at 37. The first three minutes

20

of the tape "lacked any intrinsic relevance whatsoever," causing the dramatic effect of the last few seconds to further inflame the jury's passion. Id. at 38. We also noted that the prosecutor described the tape as "compelling," the trial judge found it to be "graphic" and depicting the victim in the "throes of death," and at least one or two members of the jury were moved to tears. Id. at 36. "And lest any of them forget the impression made during the State's case-in-chief, the tape was again played for the jurors in summation . . . ." Ibid.

In State v. Slattery, we considered a case analogous to this case. 239 N.J. Super. 534 (App. Div. 1990). In Slattery, the defendant was charged with aggravated sexual assault for committing acts of sexual penetration on a child less than thirteen years old. Id. at 537. The child testified that after her thirteenth birthday, the defendant had forced her to perform oral sex on him approximately fifty times. Id. at 540. Because the evidence showed that defendant's acts of sexual penetration occurred after the child turned thirteen, the trial court reduced the charge and instructed the jury to ignore that portion of the child's testimony. Id. at 537. On appeal, we found plain error in the admission of "a substantial quantity of inadmissible and highly prejudicial evidence," which could not have be cured by the trial court's instruction. Ibid.

A-2012-12T3

In this case, the State introduced over forty of the photographs during defendant's wife's testimony. Since the photographs were taken in the home defendant shared with B.S., the State asked her to identify items in each of the photographs and estimate when they were taken. During H.B.'s testimony the next day, the State introduced the remainder of the photographs, many of them for a second time. H.B. was asked to identify herself and defendant in each of the pictures. Many of the pictures were of H.B. naked, while others were of H.B. and defendant engaged in various sexual acts. H.B. was asked to identify defendant's penis and her vagina in some of the pictures.

Clearly, the photographs were extremely prejudicial. The jury was shown over fifty sexually explicit pictures, many of them two days in a row. The photographs showed an eighteen-year-old H.B. naked and engaged in various sexual acts with defendant, a man thirty years her senior. Though the record does not indicate the jury's reaction to the photographs, the trial judge recalled the photographs at defendant's sentencing five months after the trial. The judge stated:

> Oh my God, those pictures. I can't get one of those pictures out of my head. For the rest of my life I will have to die with one of those pictures that was done in your bedroom. I'll never forget your wife's face, I'll never forget it, when she identified her own bedroom that she was in. Oh the bathroom that had just been finished, and she had to

22

> say that's the bathroom we just finished.
> That's physical evidence of something, it's
> not just out of thin air. There's something
> there.

The photographs' inflammatory potential undoubtedly had the "probable capacity to divert the minds of the jurors from a reasonable and fair evaluation of the basic issue of guilt or innocence." Abdullah, supra, 372 N.J. Super. at 270-71; accord State v. Thompson, 59 N.J. 396, 421 (1971). As the photographs' probative value was substantially outweighed by the risk of undue prejudice, their introduction by the State was improper under N.J.R.E. 403.

Though the totality of the photographs should have been excluded under N.J.R.E. 403 as cumulative and unduly prejudicial, they could have also been excluded under N.J.R.E. 404(b) as evidence of other crimes, wrongs, or acts. N.J.R.E. 404(b) states:

> Except as otherwise provided by [N.J.R.E.]
> 608(b) evidence of other crimes, wrongs, or
> acts is not admissible to prove the
> disposition of a person in order to show that
> such person acted in conformity therewith.
> Such evidence may be admitted for other
> purposes, such as proof of motive,
> opportunity, intent, preparation, plan,
> knowledge, identity or absence of mistake or
> accident when such matters are relevant to a
> material issue in dispute.

"[T]he underlying danger of admitting other-crime [or bad-act] evidence is that the jury may convict the defendant because he is a bad person in general." State v. Skinner, 218 N.J. 496, 514

(2014) (quoting <u>State v. Cofield</u>, 127 <u>N.J.</u> 328, 336 (1992)) (second alteration in original).

In <u>Cofield</u>, our Supreme Court established a four-part test to "avoid the over-use of extrinsic evidence of other crimes or wrongs" pursuant to <u>N.J.R.E.</u> 404(b).  <u>Supra</u>, 127 <u>N.J.</u> at 338.  The four-part test requires that:

> 1. The evidence of the other crime must be admissible as relevant to a material issue;
>
> 2. It must be similar in kind and reasonably close in time to the offense charged;
>
> 3. The evidence of the other crime must be clear and convincing; and
>
> 4. The probative value of the evidence must not be outweighed by its apparent prejudice.
>
> [<u>Ibid.</u> (quoting Abraham P. Ordover, <u>Balancing The Presumptions Of Guilt And Innocence: Rules 404(b), 608(b), And 609(a)</u>, 38 <u>Emory L.J.</u> 135, 160 (1989) (footnote omitted).]

Though the photographs arguably satisfy the first three prongs of the <u>Cofield</u> test, they fail the fourth prong.

The fourth prong of the <u>Cofield</u> test incorporates the balancing of prejudice versus probative value as required by <u>N.J.R.E.</u> 403.  <u>State v. Hernandez</u>, 170 <u>N.J.</u> 106, 127 (2001). However, it does not require, as does <u>N.J.R.E.</u> 403 that the prejudice substantially outweigh the probative value of the evidence before it is excluded.  The risk of undue prejudice must simply outweigh the probative value.  Biunno, Weissbard & Zegas,

supra, comment 8 on N.J.R.E. 404(b) (citing State v. Rose, 206 N.J. 141, 161-62 (2011)). As discussed in further detail above, the photographs' probative value was substantially outweighed by the risk of undue prejudice. Since the photographs should have been excluded under the higher standard of N.J.R.E. 403, it follows that they also fail to meet the more lenient fourth prong of the Cofield test.

If N.J.R.E. 404(b) evidence is found to be admissible, "the court must instruct the jury on the limited use of the evidence." Cofield, supra, 127 N.J. at 340-41. "[T]he court's instruction 'should be formulated carefully to explain precisely the permitted and prohibited purposes of the evidence, with sufficient reference to the factual context of the case to enable the jury to comprehend and appreciate the fine distinction to which it is required to adhere.'" Id. at 341 (quoting Stevens, supra, 115 N.J. at 304).

Appellate review gives "great deference" to a trial judge's determination on the admissibility of "other bad conduct" evidence. State v. Goodman, 415 N.J. Super. 210, 228 (App. Div. 2008) (citing State v. Foglia, 415 N.J. Super. 106, 122 (App. Div.), certif. denied, 205 N.J. 15 (2010)), certif. denied, 205 N.J. 78 (2011). Thus, there must be a "clear error of judgment" to overturn the trial court's determination. State v. Castagna,

400 <u>N.J. Super.</u> 164, 183 (App. Div. 2008), <u>certif. denied</u>, 217 <u>N.J.</u> 286 (2014).

Initially, it is important to recognize that the photographs in this case were not evidence of the crimes for which defendant was charged and convicted. The evidence established that the photographs were all taken after H.B. turned eighteen and, thus, she was a consenting adult. The State argues that it introduced the photographs for the purpose of establishing the existence of an ongoing sexual relationship between defendant and H.B., and further argues that under a <u>N.J.R.E.</u> 404(b) framework, the photographs were "intrinsically" relevant to the charged crime. <u>Rose</u>, <u>supra</u>, 206 <u>N.J.</u> at 176-77.

Evidence is intrinsic if it directly proves the crime charged or if the acts in question are performed contemporaneously with, and facilitate, the commission of the crime charged. <u>Id.</u> at 180 (adopted the test in <u>United States v. Green</u>, 617 <u>F.3d</u> 233, 248-49 (3d Cir.), (internal quotations omitted), <u>cert. denied</u>, 562 <u>U.S.</u> 942, 131 <u>S. Ct.</u> 363, 178 <u>L. Ed.</u> 2d 234 (2010)). Courts use a case-by-case approach in making an intrinsic determination. <u>Id.</u> at 179.

Here, the photographs depict acts that occurred after H.B.'s eighteenth birthday. Thus, the photographs do not directly prove that defendant had sex with H.B. when she was a minor. The

photographs also do not depict acts that were performed contemporaneously with, nor did they facilitate, defendant's alleged prior sex with H.B. Consequently, the photographs were not admissible as intrinsic evidence.

Instead, the photographs were only admissible as other bad acts under N.J.R.E. 404(b). In that regard, as we have already explained, the photographs were marginally relevant to the material issue of whether defendant sexually assaulted H.B. when she was a minor. They have a tendency to prove that a sexual relationship existed between H.B. and defendant, thereby constituting evidence of opportunity. Buckley, supra, 216 N.J. at 261; see also Hutchins, supra, 241 N.J. Super. at 358 (stating that a relevancy determination focuses on "the logical connection between the proffered evidence and a fact in issue, i.e., whether the thing sought to be established is more logical with the evidence than without it") (citing Manieri, supra, 151 N.J. Super. at 429-30). Accordingly, prong one of the Cofield test was satisfied.

Prongs two and three of the Cofield test were also satisfied. The photographs were taken just after H.B. turned eighteen and, thus, were close in time to the offenses charged. The photographs were also clear and convincing because they were authenticated by H.B.

27

The introduction of such a large number of photographs, however, fails the fourth prong of the Cofield test. While the photographs had a tendency to prove that a sexual relationship existed between H.B. and defendant, one or even a few photographs would have established that relationship. The introduction of more than fifty sexually graphic photographs outweighed their probative value. Indeed, introducing so many photographs had the probable effect of inflaming the jurors.

In final analysis, while these photographs had some small degree of relevancy to show the presence of an ongoing sexual relationship between defendant and H.B., the high risk of prejudice to defendant substantially outweighed any limited probative value, and therefore they should have been sua sponte excluded by the trial judge.

This error was further compounded by the lack of a limiting instruction. Accordingly, the jury was not given any guidance on how they could and how they could not use this other bad-conduct evidence. See Stevens, supra, 115 N.J. at 304 ("[A] limiting instruction addressed to the use of other-crime evidence . . . should be formulated carefully to explain precisely the permitted and prohibited purposes of the evidence, with sufficient reference to the factual context of the case to enable the jury to comprehend

and appreciate the fine distinction to which it is required to adhere.").

In summation, the prosecutor implied that the graphic photographs provided proof that defendant and H.B. maintained a sexual relationship prior to her eighteenth birthday, despite them being taken in late July 2002, commenting:

> [I]f this relationship didn't happen until it was legal, do you think that [H.B.] would be that comfortable - - those pictures, if you recall, I think you saw them twice, that she would be that comfortable in the way she's posing and that sexual, if this relationship - - you don't go from zero to sixty in a month, ladies and gentlemen. That's just not reasonable. That's not rational.
>
> What's more credible? That this relationship started well before that, well before [H.B.] hits that certain number, before he knew when he couldn't cross the line.

In just this short passage, the prosecutor opened the door for the jury to view and evaluate the photographs in the exact manner a N.J.R.E. 404(b) limiting instruction would have warranted, had one been given by the trial judge.

Again, the wholesale introduction of all the photographs clearly carried with it the potential to divert the minds of the jurors from a reasoned and fair evaluation of the basic issue of guilt or innocence. The emphasis of the salacious aspect of this evidence also supports our conclusion that their admission, in the context of this case, constituted reversible error and therefore

the use of all these photographs should have been excluded under both N.J.R.E. 404(b) and 403.

C.  Defendant's Other Arguments

In light of our decision to reverse and remand for a new trial, defendant's remaining arguments are moot. We do, however, offer the following guidance for the new trial.

First, we observe that our opinion regarding the undue influence caused by the admission of all the photographs does not address the State's proffer of one or two of the photographs at a new trial. The question of whether the State can, in the future, introduce one or two of the less lurid photographs subject to a limiting instruction by the court, is left to the sound discretion of the trial judge.

Defendant also contends that the State committed prejudicial error by commenting in summation on defendant's silence when confronted by H.B. during their audio-recorded dinner conversation. We add this comment to guide the court on retrial.

The prosecutor's obligation is to ensure that justice is done. State v. Smith, 167 N.J. 158, 177 (2004); State v. Land, 435 N.J. Super. 249, 272 (App. Div. 2014). "[A] prosecutor must refrain from improper methods that result in wrongful conviction, and is obligated to use legitimate means to bring about a just conviction." State v. Ingram, 196 N.J. 23, 43 (2008) (quoting

State v. Jenewicz, 193 N.J. 440, 471 (2008)). The prosecutor in a criminal case is expected to make vigorous and forceful closing arguments to a jury. Nevertheless, a prosecutor must avoid comments that invade the rights bestowed on defendants, including the right to remain silent. State v. Muhammad, 182 N.J. 551, 568-69 (2005) (holding that a prosecutor may not use at trial a defendant's silence when that silence arises "at or near" the time of arrest, during official interrogation, or while in police custody). Prosecutorial "[r]emarks that 'skirt the edges' of impermissible comment are neither desirable nor worth the risk." State v. Engel, 249 N.J. Super. 336, 382 (App. Div.), certif. denied, 130 N.J. 393 (1991).

## III.

The conviction on count four is reversed and that count is dismissed. Defendant's convictions on the other counts are reversed and the matter is remanded for a new trial.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION