800 A.2d 207 (2002)
352 N.J. Super. 369
STATE of New Jersey, Plaintiff-Respondent,
v.
L.P., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted May 7, 2002.
Decided June 27, 2002.
*209 Peter A. Garcia, Acting Public Defender, attorney for appellant (Michael C. Kazer, Designated Counsel, on the brief).
Peter C. Harvey, Acting Attorney General, attorney for respondent (Daniel I. Bornstein, Deputy Attorney General, of counsel and on the brief).
Before Judges SKILLMAN, WALLACE, JR. and CARCHMAN.
*208 The opinion of the court was delivered by SKILLMAN, P.J.A.D.
The primary issue presented by this appeal is whether the trial court properly admitted evidence of a child sexual assault victim's out-of-court statements under the fresh complaint rule even though the statements were made nearly a year after the last of the alleged assaults. We conclude that in view of the continuing aura of intimidation under which the child lived until four months before she told her foster mother and another girl residing in the foster home about the sexual assaults, her statements were made within the reasonable time required for admission under the fresh complaint rule.
Defendant was indicted on four counts of aggravated sexual assault, in violation of N.J.S.A. 2C:14-2a(1); sexual assault, in violation of N.J.S.A. 2C:14-2b; kidnapping, in violation of N.J.S.A. 2C:13-1a; and endangering the welfare of a child, in violation of N.J.S.A. 2C:24-4a. At the end of the trial, the trial court dismissed the kidnapping charge. The jury found defendant guilty of sexual assault and endangering the welfare of a child, but acquitted him of the four counts of aggravated sexual assault. The trial court imposed concurrent seven-year terms of imprisonment for both convictions. The court also imposed the statutorily mandated penalties and assessments and sentenced defendant to registration and community supervision for life in accordance with Megan's Law, *210 N.J.S.A. 2C:7-1 to -11; N.J.S.A. 2C:43-6.4.
The victim of the offenses was defendant's adopted daughter, J.R.[1] Defendant, his wife, their natural children, Nancy and Mark, and J.R. lived together from 1992, when J.R. was seven years old, until 1997, when she was twelve. J.R. testified that defendant sexually assaulted her on six separate occasions between 1994 and 1997. After several of the incidents, defendant threatened to kill her if she told anyone what he had done to her. Defendant also struck J.R. when she attempted to resist his sexual assaults.
In October 1997, the Division of Youth and Family Services (DYFS) removed J.R., Nancy and Mark from defendant's home for reasons unrelated to sexual abuse and placed J.R. and Nancy in foster care with Sarah Rodriguez. After Nancy hit J.R. and behaved inappropriately in other ways, she was removed from the Rodriguez home and placed in another foster home. Thereafter, J.R. became quite friendly with one of the other foster children in Ms. Rodriguez' care, Barbara.
In July 1998, Barbara suggested to J.R. and another of the foster children in the home that they play "Skeleton in the Closet," a game in which each of the participants discloses a personal secret. During this game, J.R. divulged for the first time that she had been sexually assaulted by defendant. Barbara later told Rodriguez that J.R. had "something bad" to tell her.
A few days later, Rodriguez asked J.R. whether she had anything to tell her, and J.R. then said that defendant had sexually abused her. Rodriguez reported this allegation to J.R.'s DYFS caseworker, who notified the police. J.R. subsequently gave a formal statement to the police, which resulted in defendant's arrest.
At defendant's trial, J.R. testified consistently with what she had told Barbara and Ms. Rodriguez concerning the sexual abuse allegedly perpetrated upon her by defendant. On cross-examination, J.R. admitted that she first told Barbara and Rodriguez about the abuse shortly after she was told that DYFS planned to remove her from Rodriguez's home and reunite her with defendant and her adoptive mother. She also admitted that she wanted to stay in the Rodriguez home.
The State's evidence included the testimony of Anthony D'Urso, a psychologist, concerning Child Sexual Abuse Accommodation Syndrome (CSAAS). Dr. D'Urso described this syndrome as consisting of five types of behaviors that commonly occur in cases of child sexual abuse: secrecy; helplessness; accommodation; delayed disclosure; and recantation. He stated that children "typically do not [immediately] disclose the [sexual] abuse because the person abusing them has some force or weight around them[,]" such as the abuser occupying the role of a parent. According to Dr. D'Urso, "It is a very rare occurrence when a child is abused once and discloses immediately." He also stated that child sexual abuse victims sometime disclose the abuse because there is a "change of circumstance" such as removal "out of their home," which leads them to "feel safe and away from the perpetrator."
On the appeal from his convictions for sexual assault and endangering the welfare of a child, defendant presents the following arguments:
I. THE COURT IMPROPERLY ADMITTED "FRESH COMPLAINT" *211 TESTIMONY OF [BARBARA] AND [SARAH RODRIGUEZ].
A. THE STATEMENTS WERE NOT MADE WITHIN A REASONABLE TIME AFTER THE ALLEGED ACTS OCCURRED.
B. THE STATEMENTS DID NOT CONSTITUTE A "FRESH COMPLAINT" BECAUSE THEY WERE UNTRUSTWORTHY AND BECAUSE THEY WERE NOT SPONTANEOUS.
II. THE COURT ABUSED ITS DISCRETION IN ADMITTING THE NUDE PHOTOGRAPHS OF THE DEFENDANT, INCLUDING PHOTOGRAPHS OF THE DEFENDANT'S PENIS, INTO EVIDENCE.
III. THE DEFENDANT'S CONVICTIONS SHOULD BE REVERSED BECAUSE OF PROSECUTORIAL MISCONDUCT DURING THE TRIAL.
A. TESTIMONY THAT DEFENDANT "PHYSICALLY ABUSED" [J.R.] UNRELATED TO THE CHARGES SET FORTH IN THE INDICTMENT WAS IMPROPERLY ELICITED BY THE PROSECUTOR.
B. THE PROSECUTOR IGNORED THE COURT'S ORDER PRECLUDING HER FROM ARGUING IN SUMMATION THAT EVIDENCE OF ANAL OR VAGINAL PENETRATION WHICH MAY HAVE EXISTED HEALED.
IV. THE COURT ABUSED ITS DISCRETION IN DENYING DEFENDANT'S MOTION FOR A JUDGMENT OF ACQUITTAL AT THE END OF THE STATE'S CASE ON THE CHARGES OF FIRST DEGREE AGGRAVATED SEXUAL ASSAULT ON COUNTS ONE, TWO, THREE, AND FOUR.
V. IMPOSITION OF A SEVEN (7) YEAR SENTENCE WAS EXCESSIVE AND CONSTITUTES AN ABUSE OF THE COURT'S DISCRETION.
A. THE COURT ABUSED ITS DISCRETION IN FINDING THAT THERE WAS A PARTICULARIZED NEED FOR DETERRENCE.
B. THE COURT ABUSED ITS DISCRETION IN NOT FINDING MITIGATING FACTOR N.J.S.A. 2C:44-1(b)(8) (THE DEFENDANT'S CONDUCT WAS THE RESULT OF CIRCUMSTANCES UNLIKELY TO RECUR) AND MITIGATING FACTOR N.J.S.A. 2C:44-1(b)(10) (THE DEFENDANT IS PARTICULARLY LIKELY TO RESPOND AFFIRMATIVELY TO PROBATION) PRESENT THEREBY JUSTIFYING IMPOSITION OF THE MINIMUM FIVE (5) YEAR SENTENCE FOR A CRIME OF THE SECOND DEGREE.
We reject defendant's arguments and affirm his conviction and sentence.
The only issue that requires extended discussion is the admissibility of the State's fresh complaint evidence. However, before considering this issue, we discuss briefly defendant's arguments that the trial court abused its discretion in admitting nude photographs of him into evidence and that a reversal of his conviction is required because the jury heard testimony that he committed physical abuse of the victim unrelated to the charges set forth in the indictment.

I
J.R. testified during her direct examination that defendant was nude when he committed some of the sexual assaults upon her, at which time she observed that *212 he had freckles on his chest and back, a mole with hair coming out on his back, brown and black hair in the area of his penis, and a scar from hernia surgery in close proximity to his penis. The State sought to introduce photographs of those areas of defendant's body to corroborate this part of J.R.'s testimony. Defendant objected to the admission of these exhibits. The trial court then asked whether defendant would stipulate to the accuracy of J.R.'s description of those areas of his body. After defendant declined to make this stipulation, the trial court admitted the photographs, ruling that the prejudicial effect of the jury seeing nude photographs of defendant did not substantially outweigh their probative value as corroboration of J.R.'s testimony.
Evidence Rule 403(a) authorizes the trial court to exclude relevant evidence "if its probative value is substantially outweighed by the risk of undue prejudice." On appeal, the admission or exclusion of evidence under this rule must be upheld "unless it can be shown that the trial court palpably abused its discretion, that is, that its finding was so wide of the mark that a manifest denial of justice resulted." State v. Carter, 91 N.J. 86, 106, 449 A.2d 1280 (1982).
The photographs of the private parts of defendant's body provided direct corroboration of J.R.'s description based on her observations during the sexual assaults defendant allegedly committed upon her. It is not evident to us that any prejudice could have resulted from the jury's observation of the nude photographs of defendant's body, but even if some jurors found the photographs offensive, there is no basis for concluding that the court palpably abused its discretion in ruling that the probative value of the photographs was not substantially outweighed by the risk of such prejudice. See State v. Thompson, 59 N.J. 396, 419-21, 283 A.2d 513 (1971). We also note that defendant could have avoided any possible prejudicial impact of the photographs by simply stipulating that J.R.'s description of his body features was accurate.

II
Defendant's argument that his conviction must be reversed because the jury heard evidence that he committed physical abuse upon J.R. unrelated to the charges set forth in the indictment is based on two incidents that occurred during the testimony of the State's witnesses. The first incident occurred when the prosecutor asked Barbara, "Did [J.R.] ever talk about [defendant] to you?" and she responded, "The only thing she used to say that he was strict and that they used to get hit a lot, but Nancy used to agree." At that point, defense counsel interposed an objection and moved for a mistrial. The court denied the motion and directed the jury to disregard Barbara's comment.
The second mention of defendant's alleged physical abuse of J.R. occurred during the prosecutor's direct examination of J.R.'s foster mother, Sarah Rodriguez:
Q. Okay. So, [Nancy] would become disturbed when [J.R.] wouldn't go out with her to see the father and then she would come back and threaten [J.R.]?
A. Yes.
....
Q. Okay. Did you make any observations as to why [J.R.] didn't go out with [Nancy]?
[Defense Counsel]: Objection, Judge. She's asking why somebody didn't do something. That's not an observation, that's
Q. What was your observation of [J.R.]'s behavior?
*213 A. I know she was afraid of him but, that time, it wasI knew she was ah, abused, physical abuse, so, I
Defense counsel objected, and the trial court again indicated that it would not grant a mistrial. The court then instructed the jury to disregard Rodriguez's answer to the prosecutor's question.
The determination whether to grant a mistrial "rests within the sound discretion of the trial court" and must be upheld on appeal unless there is a "clear showing that the court abused its discretion or that the defendant suffered actual harm." State v. LaBrutto, 114 N.J. 187, 207, 553 A.2d 335 (1989). An appellate court extends substantial deference to a trial court's determination whether to grant a mistrial because "[t]he decision on whether inadmissible evidence is of such a nature as to be susceptible of being cured by a cautionary or limiting instruction, or instead requires the more severe response of a mistrial, is one that is peculiarly within the competence of the trial judge, who has the feel of the case and is best equipped to gauge the effect of a prejudicial comment on the jury in the overall setting." State v. Winter, 96 N.J. 640, 646-47, 477 A.2d 323 (1984).
We perceive no clear abuse of discretion in the trial court's denial of defendant's motion for mistrial based on Barbara's and Ms. Rodriguez's statements that J.R. told them she had been physically abused. Those statements were not directly responsive to the prosecutor's questions, and there is no reason to believe that the prosecutor attempted to elicit such testimony. Moreover, J.R. herself testified that defendant struck her on several occasions when she resisted his sexual assaults. Because those physical assaults were an integral part of the sexual offenses with which defendant was charged, defendant does not question the admissibility of this testimony. See State v. Martini, 131 N.J. 176, 238-42, 619 A.2d 1208 (1993), cert. denied, 516 U.S. 875, 116 S.Ct. 203, 133 L.Ed.2d 137 (1995). It is unclear whether the physical abuse J.R. reported to Barbara and Ms. Rodriguez involved the same conduct as J.R.'s testimony. In any event, there is no basis for us to conclude that the trial court's curative instructions to the jury concerning Barbara's and Rodriguez's testimony were insufficient to negate any potential prejudice to defendant.

III
We turn to the primary issue presented by this appealwhether the trial court properly allowed Barbara and Ms. Rodriguez to testify under the fresh complaint rule that J.R. told them in July 1998 that defendant had sexually abused her. "The present rule in New Jersey is that to qualify as fresh complaint [evidence], the victim's statements to someone she would ordinarily turn to for support must have been made within a reasonable time after the alleged assault and must have been spontaneous and voluntary." State v. Hill, 121 N.J. 150, 163, 578 A.2d 370 (1990). "[T]he purpose of the rule is to allow the State to meet in advance the negative inference which would be drawn from the absence of evidence that the victim reported the incident to one to whom she would naturally turn for comfort and advice." State v. J.S., 222 N.J.Super. 247, 256, 536 A.2d 769 (App.Div.), certif. denied, 111 N.J. 588, 589, 546 A.2d 513 (1988).[2] The *214 determination whether the fresh complaint rule's conditions of admissibility have been satisfied is committed to the discretion of the trial court. Hill, supra, 121 N.J. at 167-68, 578 A.2d 370.
Defendant does not question the fact that Barbara and Ms. Rodriguez were persons whom J.R. "would ordinarily turn to for support." Id. at 163, 578 A.2d 370. However, defendant argues that J.R.'s statements to them should not have been admitted because they were not "spontaneous and voluntary" and they were not "made within a reasonable time after the alleged [sexual] assault[s]." Ibid.
Defendant's argument that J.R.'s statements were not "spontaneous and voluntary" requires only brief discussion. Our Supreme Court has "recognize[d] ... that not all questioning preceding a complaint [of sexual abuse] deprives an utterance of the spontaneity and voluntariness needed for it to be admissible under the fresh complaint rule." State v. Bethune, 121 N.J. 137, 144, 578 A.2d 364 (1990). "Hence, ... general non-coercive questions do not rob a [sexual abuse] complaint of its admissibility[.]" Ibid. "In each case the trial court must examine the degree of coercion involved in the questioning of the child and determine whether the child's complaint was spontaneous or directly in response to the interrogation." Id. at 145, 578 A.2d 364.
J.R.'s initial revelation to Barbara that defendant had sexually abused her was not prompted by any statement or other conduct that could be characterized as "interrogation." Barbara simply suggested to J.R. and another girl that they play a game called "skeleton in the closet," in which each of the participants tells an embarrassing secret she has not told before. Barbara did not suggest that those secrets should be sexual in nature. Without any encouragement, J.R. said she wanted to go first and then revealed to the other two girls that she had been sexually abused by defendant. Thus, this revelation was clearly spontaneous and voluntary.
After J.R. told Barbara that she had been sexually abused by defendant, Barbara said to Ms. Rodriguez that J.R. had "something bad" to tell her. Later that day, Rodriguez asked J.R., "you have to tell me something?" When J.R. responded "yes," Rodriguez said, "what happened?" J.R. then told Rodriguez that *215 defendant had sexually abused her. Although Rodriguez's brief questioning of J.R. could perhaps be characterized as "interrogation," it was not in any sense suggestive or coercive. Therefore, the circumstances of Rodriguez's questioning of J.R. and the content of her questions support the conclusion that J.R.'s revelation of defendant's sexual abuse to Rodriguez was also spontaneous and voluntary. See Bethune, supra, 121 N.J. at 145, 578 A.2d 364.
The requirement that a victim's statements be made within a reasonable time after an alleged sexual assault to be admissible under the fresh complaint rule is applied more flexibly in cases involving children than in those involving adults: "In deference to children's special vulnerability to being cajoled and coerced into remaining silent by their abusers, courts allow children additional time to make a fresh complaint." Id. at 143, 578 A.2d 364. Thus, in State v. Hummel, 132 N.J.Super. 412, 334 A.2d 52 (App.Div.), certif. denied, 67 N.J. 102, 335 A.2d 54 (1975), cited with approval in Bethune, 121 N.J. at 143, 578 A.2d 364, this court held that testimony concerning alleged child sexual abuse victims' statements were admissible under the fresh complaint rule even though some of the statements were made approximately three years after the beginning of the sexual assaults and four to six weeks after the children left the defendant's home and the sexual assaults ended:
In determining what constitutes a reasonable time in this case it is important to recognize that both R and D were foster children under the control of defendant and his wife. Additionally, the jury obviously believed their testimony that defendant had threatened them with being put away in a children's shelter if they spoke. Under these circumstances their continued silence, except with respect to statements to each other, while resident in the [defendant's] home is not unreasonable. Nor is a delay of four to six weeks before R informed her sister L of what had happened unreasonable. We cannot conclude, under evidence which the jury could find credible, that a 15-year-old girl, abused and threatened for some three years, would not reasonably require several weeks to overcome her residual fears.

[132 N.J.Super. at 423, 334 A.2d 52.]
The courts in other jurisdictions have upheld the admission of evidence of statements by alleged child sexual abuse victims under the fresh complaint rule in cases where victims have delayed even longer than in Hummel before disclosing the abuse. See, e.g., Hunt v. State, 44 Ala.App. 479, 213 So.2d 664, 665-66, cert. denied, 282 Ala. 727, 213 So.2d 666 (1968) (nine month delay); Commonwealth v. McKinnon, 35 Mass.App.Ct. 398, 620 N.E.2d 792, 793-96 (1993) (thirty-four month delay); see generally Kathryn M. Stanchi, The Paradox of the Fresh Complaint Rule, 37 B.C. L.Rev. 441, 451-54 (1996).
Moreover, the introduction of evidence of an alleged child sexual abuse victim's initial complaints, even if made a significant time after the abuse, is especially appropriate in a case where the State relies upon CSAAS evidence to explain why the victim did not complain about the alleged abuse shortly after it occurred. Such evidence, presented in this case by Dr. D'Urso, shows that child sexual abuse victims commonly exhibit specific behavioral traits, including secrecy, helplessness, accommodation and delayed disclosure. See State v. J.Q., 130 N.J. 554, 568-71, 617 A.2d 1196 (1993); see also State v. W.L., 278 N.J.Super. 295, 301-02, 650 A.2d 1035 (App.Div.1995). To apply this general scientific theory in the evaluation *216 of a particular alleged sexual abuse victim's credibility, a jury must be provided with evidence concerning the timing and circumstances of the victim's initial disclosure of the abuse. Therefore, a court should take a liberal approach regarding the introduction of fresh complaint evidence in a case in which CSAAS evidence will be presented.
Although J.R. delayed a somewhat longer period than the victims in Hummel in disclosing defendant's sexual abuse, we are satisfied that the trial court did not abuse its discretion in concluding that her statements to Barbara and Ms. Rodriguez were made within a reasonable time after the abuse. The last incident of sexual abuse occurred in the late summer or early fall of 1997. However, J.R. continued living with defendant until late October of that year, and defendant had warned J.R. that he would kill her if she told anyone about the sexual abuse. Defendant reinforced this threat by hitting J.R. when she refused to accede to his demands to engage in certain sexual activities. Furthermore, even after J.R. was removed from defendant's home, she was placed in the same foster home as defendant's natural daughter, Nancy, who engaged in various acts of physical violence against J.R., including hitting and choking her, and who also regularly visited with defendant. When defendant would come to the foster home to pick up Nancy, defendant and Nancy would try to force J.R. to go with them, but she went only one time. Thus, J.R. was not freed from the aura of intimidation to which she was subjected by defendant and Nancy until Nancy moved out of the Rodriguez home in March 1998. J.R. complained to Barbara and Rodriguez about the sexual abuse defendant had perpetrated upon her approximately four months later, in July 1998. Under these circumstances, we agree with the trial court that those complaints were made within a reasonable time and thus properly admitted under the fresh complaint rule.
The other arguments defendant advances in this appeal are clearly without merit and do not warrant discussion. R. 2:11-3(e)(2).
Affirmed.
NOTES
[1] We have used fictitious names and initials to refer to defendant and the victim as well as the members of defendant's household and of the foster home in which the victim was placed.
[2] We note that a Supreme Court committee recommended abolition of the fresh complaint doctrine in 1997. See Final Report of the Special Supreme Court Committee on Revision of Rules Governing Fresh Complaint (July 30, 1997). However, the Court did not adopt this recommendation. Therefore, the fresh complaint rule, as interpreted in Hill and Bethune, is still controlling law in New Jersey. We also note that the California Supreme Court has abolished the fresh complaint rule as traditionally defined by judicial decision. See People v. Brown, 8 Cal.4th 746, 35 Cal. Rptr.2d 407, 883 P.2d 949 (1994). But the Court also concluded that "the limited, nonhearsay evidence that in the past has been admitted under the fresh-complaint doctrine nonetheless is, in general, properly admissible at trial under generally applicable evidentiary standards." Id. 35 Cal.Rptr.2d 407, 883 P.2d at 950. The new evidentiary rule endorsed by the California Supreme Court is that "under principles generally applicable to the determination of evidentiary relevance and admissibility, proof of an extrajudicial complaint, made by the victim of a sexual offense, disclosing the alleged assault, may be admissible for a limited, nonhearsay purposenamely, to establish the fact of, and the circumstances surrounding, the victim's disclosure of the assault to otherswhenever the fact that the disclosure was made and the circumstances under which it was made are relevant to the trier of fact's determination as to whether the offense occurred." Ibid.; see also State v. Woodard, 146 N.H. 221, 769 A.2d 379, 384 (2001). Thus, in California, "the `freshness' of a complaint, and the `volunteered' nature of the complaint" are no longer "essential prerequisites to the admissibility of such evidence." Brown, supra, 35 Cal.Rptr.2d 407, 883 P.2d at 951. It also appears that this rule of admissibility of evidence of a victim's complaint about a crime is not limited to sexual assault cases. See id. 35 Cal.Rptr.2d 407, 883 P.2d at 957-59.