# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0217-19T4

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

J.P.D.,

     Defendant-Respondent.

_____

Argued January 14, 2020 – Decided May 4, 2020

Before Judges Hoffman and Firko.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 18-03-0389.

Ian C. Kennedy, Assistant Prosecutor, argued the cause for appellant (Mark Musella, Bergen County Prosecutor, attorney; William P. Miller, Assistant Prosecutor, of counsel; Ian C. Kennedy, of counsel and on the brief).

Tamra Dawn Katcher argued the cause for respondent (Rem Katcher Law Group, attorneys; Joseph P. Rem, of counsel; Tamra Dawn Katcher, of counsel and on the brief).

PER CURIAM

By leave granted, the State appeals from an August 9, 2019 Law Division order denying the State's motion for reconsideration to allow fresh complaint testimony. For the reasons that follow, we affirm, in part, and vacate and remand, in part.

I

On March 20, 2018, a Bergen County grand jury returned an indictment against defendant,[1] charging him with sexual assault, in violation of N.J.S.A. 2C:14-29(b), and endangering the welfare of a minor, in violation of N.J.S.A. 2C:24-4(a)(1). The indictment identified L.W. (Linda), born in April 2006, as the victim and alleged the offense occurred "on or about January 17, 2017."

Before trial, the State filed a motion to admit statements made by Linda to her parents, pursuant to the fresh complaint doctrine.[2] The motion judge heard the testimony of Linda's father, E.W. (Edward) on May 2, 2019, approximately

---

[1]  We utilize initials and pseudonyms when referring to defendant, the complaining witness and her family members, pursuant to N.J.S.A. 2A:82-46 and Rule 1:38-3(c)(9).

[2]  The fresh complaint doctrine allows "evidence of a victim's complaint of sexual abuse, otherwise inadmissible as hearsay, to negate the inference that the victim's initial silence or delay indicates that the charge is fabricated." State v. R.K., 220 N.J. 444, 455 (2015).

eighteen months after Linda made the subject disclosure. Edward testified that in November 2017, after viewing news accounts of sexual harassment allegations against Matt Lauer, he and his wife, C.W. (Caroline), decided to generally discuss sexual harassment with their two daughters, Linda and K.W. (Karen), her older sister by two years. The parents informed them that if they ever experienced any sexual harassment, they could freely discuss it with them.

According to Edward, in response to the conversation, Linda disclosed that her uncle (defendant) "touched her inappropriately . . . and his hand went down her . . . garment," at a family gathering eleven months earlier. At the time of the incident, Linda was ten years old.

Shocked by the revelation, Edward and Caroline waited several days before initiating a second conversation. They questioned Linda alone regarding the factual details of the alleged sexual abuse; at that time, Linda said she

> was sitting on [defendant's] lap and that he had reached in the front of her dress[.] . . . [W]e . . . asked if . . . it was over or under her dress and she said that it was under and that he had touched[,] touched her vagina. She then said that he had asked her if . . . she wanted him to stop[,] to which she replied yes . . . she then told us that [defendant] had told her quietly not to tell anybody [because] he could get into a lot of trouble for this.

After this second conversation, Edward discussed the matter with a family member and then contacted the police on December 11, 2017.

On June 12, 2019, the motion judge issued a written decision denying the State's motion to admit the fresh complaint evidence. The judge found Linda disclosed the incident to a person she would naturally turn to and she complained within a reasonable time, satisfying the first two elements under State v. Hill, 121 N.J. 150, 163 (1990).[3] However, the judge found the State failed to satisfy the third element – that Linda's disclosure was spontaneous and voluntary. The judge reached this conclusion because Edward and his wife initiated the conversation with Linda and then, three days later, asked Linda targeted questions that resulted in her specific answers.

Significantly, the judge did not analyze the case under State v. Bethune, 121 N.J. 137 (1990).[4] Additionally, the judge evaluated the matter as if Linda

---

[3] In Hill, our Supreme Court established a three-part test that out-of-court statements must satisfy to qualify as admissible fresh-complaint testimony – specifically, the statements by the victim must be: (1) "to someone she would ordinarily turn to for support"; (2) "made within a reasonable time after the alleged assault"; and (3) "spontaneous and voluntary." 121 N.J. at 163.

[4] In Bethune, the Court addressed the application of the fresh complaint exception in child sexual abuse cases. 121 N.J. at 139. At issue was whether statements regarding sexual abuse first elicited from a child during questioning could be introduced as evidence of a fresh complaint. Ibid. The Court

and her parents had one single conversation, instead of two separate and distinct conversations.

The State then filed a motion for reconsideration. After hearing oral argument, the judge denied reconsideration. According to the State, it expected the judge would refrain from deciding its fresh complaint motion until he issued a decision on defendant's motion to compel the psychological records of Caroline; however, the State acknowledged that Caroline would testify to the same information as Edward.

---

concluded that courts should apply fresh complaint guidelines flexibly to children considering the reluctance of children to report a sexual assault and their limited understanding of what was done to them. Id. at 143-44. The Court then set forth factors to consider when determining the admissibility of fresh complaint testimony in relation to children:

> In each case the trial court must examine the degree of coercion involved in the questioning of the child and determine whether the child's complaint was spontaneous or directly in response to the interrogation. Among the factors the court should consider in arriving at its determination are the age of the child, the child's relationship with the interviewer, the circumstances under which the interrogation takes place, whether the child initiated the discussion, the type of questions asked, whether they were leading, and their specificity regarding the alleged abuser and the acts alleged.
>
> [Id. at 145.]

On reconsideration, the motion judge acknowledged he "did not appreciate that the statements made by [Linda] during the first family conference were the subject of the State's motion." As a result, his initial decision analyzed the testimony as if only one conversation occurred, instead of two separate conversations. The judge then applied the Bethune factors to the first conversation and ruled it inadmissible, concluding "[Linda's] first statement was not spontaneous but may have been coercive (this court does not know exactly what was asked)." Analyzing the Bethune factors, the judge found:

> The discussion took place in the family home at the dining room table. The [parents] brought up the topic of sexual harassment. The exact words used by the [parents] during the family discussion were not disclosed to this court. This court cannot determine whether the questions were leading. [Linda] introduced the defendant's name in the discussion. The court does not know if any of the questions included mention the defendant or the alleged abusive act.

The judge then analyzed the second conversation under the Bethune factors and again found Linda's later statements were not spontaneous and were coercive. The judge emphasized that Linda's parents "pressed [Linda] for details she did not want to divulge. . . . [S]ome of the questions were somewhat specific. At least one question was extremely specific."

Thereafter, we granted the State leave to file this interlocutory appeal.

6

II

The governing legal standards are clear. The admissibility of fresh complaint evidence is "committed to the sound discretion of the trial judge." State v. W.B., 205 N.J. 588, 616 (2011). Accordingly, as with other evidentiary rulings, we should reverse "only where 'a clear error of judgment' is established." State v. Loftin, 146 N.J. 295, 357 (1996) (quoting State v. Koedatich, 112 N.J. 225, 313 (1988)).

Fresh complaint evidence has a narrow purpose: it is admissible "to prove only that the alleged victim complained [at a particular time], not to corroborate the victim's allegations concerning the crime." State v. R.E.B., 385 N.J. Super. 72, 89 (App. Div. 2006) (quoting Bethune, 121 N.J. at 146). "It allows the State to negate the inference that the victim was not sexually assaulted because of her silence. Only the fact of the complaint, not the details, is admissible." Hill, 121 N.J. 150 at 163; see also State v. Tirone, 64 N.J. 222, 227 (1974) (stating the purpose of fresh complaint testimony is "to meet in advance a charge of recent fabrication.").

The Court in Bethune determined "that general, non-coercive questions do not rob a complaint of its admissibility under the fresh complaint [exception]." 121 N.J. at 144. See Hill, 121 N.J. at 167 ("[S]tatements made

7

after non-coercive questions have the necessary spontaneity and voluntariness to qualify as [a] fresh complaint" but "statements that are procured by pointed, inquisitive, coercive interrogation lack the degree of voluntariness necessary to qualify under the [fresh complaint exception].").

Specifically, in Bethune, the court reasoned that complaints by children elicited by questions such as "what's wrong?", "what happened?", and "did he do something to you?" were admissible because they were "general, non-coercive questions." Id. at 144-45 (citations omitted). In determining the difference between "questioning that merely precedes a complaint of sexual abuse and coercive questioning[,]" the trial judge "must examine the degree of coercion involved in the questioning of the child and determine whether the child's complaint was spontaneous or directly in response to the interrogation." Id. at 145.

For example, in State v. J.S. 222 N.J. Super. 247, 253 (App Div. 1988), we held that a mother's testimony regarding her daughter's sexual abuse was inadmissible under the fresh complaint exception. In that case, the child's mother testified that, when approached about the subject, the child cried and refused to talk about it. Ibid. In order to solicit answers, the mother specifically asked the child if the defendant had touched or penetrated different parts of her

body, to which the child responded with exclusively "yes" or "no" answers. Ibid.

This court noted:

> While the methods employed by Mrs. M. to find out what had happened to her daughter were certainly understandable, our concern is whether the child's out-of-court responses satisfy the exacting standards for admissibility under a rule of evidence which permits such testimony only to demonstrate that the victim made a "complaint" . . . . In our view, to qualify as a complaint the victim's statement must at least be self-motivated and not extracted by interrogation.
>
> [Ibid. (emphasis added).]

The State argues that this case is analogous to State v. L.P., 352 N.J. Super. 369 (App. Div. 2002). In that case, the victim and her friends played a game called "Skeleton in the Closet" where each of the participants disclosed an "embarrassing secret." Id. at 382. During the game, the victim divulged to her friend that she had been sexually assaulted by the defendant. Ibid. The victim's friend then told the foster parent that something "bad" had happened to the victim. The foster parent asked the victim, "you have to tell me something?" The victim responded "yes," and then recounted the incident of sexual abuse, after the foster parent asked, "What happened?" Ibid. We found that the question could "perhaps be characterized as [an] interrogation," but "was not in

any sense suggestive or coercive" and therefore found the victim's statements spontaneous and voluntary. Ibid. (internal quotations omitted).

Additionally, the State relies on State v. Ramos, 203 N.J. Super. 197 (Law Div. 1985). In Ramos, the victim brought home material prepared by her school to assist parents in speaking to their children about sexual matters. Id. at 200. The parents discussed the documents and the victim asked if the defendant was permitted to touch her privates and then indicated that the defendant had touched her private parts multiple times. Ibid. The mother told the victim that she would talk to the defendant's wife about the matter because she did not fully believe her. Id. at 201. The court admitted the statements as a fresh complaint. Id. at 203.

On reconsideration, the motion judge addressed the first conversation, and found that Linda's parents initiated the conversation "about the allegations made against Mr. Lauer," but noted that Edward "did not recall exactly what [was] said to their daughters." Because Edward could not recall the exact words used, the judge concluded that statements made by Linda during the first conversation "were not spontaneous and may have been coercive."

While the motion judge recited the Bethune factors in his reconsideration decision, we note he only analyzed one factor, the type of questions asked, and

emphasized that Edward could not recall "[t]he exact words used . . . during the family discussion." Edward's testimony regarding the first conversation reflects that only two questions were asked of Linda at that time: 1) after she said there was an occurrence with her uncle, she was asked "what had happened?" Linda replied that he touched her inappropriately and his hand went down her garment: and 2) she was asked "if she needed some time?" In response, she said she did.

Significantly, the judge "found [Edward] to be credible and believable," and further noted that his "inability to remember the exact questions asked is understandable (he is not a professional dealing with someone else's allegedly abused child, he is a father dealing with the alleged abuse of his own daughter) . . . ." In addition, the judge did not cite any authority for imposing upon the State the burden to prove the "exact words" or "exact questions" leading to a fresh complaint. Nor do we view Bethune as imposing such a burden.

We further note that Edward testified that he and his wife sought to educate their children about sexual harassment, not sexual abuse. They told their daughters they were available to discuss any issues relating to sexual harassment "judgment free." They initiated this discussion because of media accounts of sexual harassment involving a high-profile individual. The record reflects no evidence that Linda's parents had any preconceived notions of sexual

A-0217-19T4

abuse entering the conversation. According to Edward, "My wife and I were both in shock[,]" after Linda said there was an occurrence with her uncle, "that he had touched her." They asked, "What happened?" At that point, Linda disclosed the improper touching.

Like in Bethune and L.P., we conclude the limited questioning during the first conversation constituted general, non-coercive questioning because Linda's parents did not "press the topic" or ask anything specific. Without knowledge of the incident, they advised Linda and her sister that they could confide in them if anything regarding sexual harassment ever occurred. Linda's response indicating that her uncle touched her inappropriately was in response to a general discussion of sexual harassment. Therefore, the circumstances did not originate from any "pointed" questioning that would negate the voluntariness requirement under the third element of Hill. While Linda did not initiate the conversation, Bethune acknowledges the natural reluctance of children to initiate any conversation regarding sexual abuse, therefore making it necessary "to be flexible" in applying the exception. Bethune, 121 N.J. at 144.

Here, the circumstances surrounding the conversation were very general and factually limited; therefore, while the conversation can be considered an interrogation like in L.P., the questions asked cannot be considered suggestive

or coercive and were not targeted like the questions asked in J.S. In addition, as noted, the parents had no prior knowledge of sexual abuse by defendant. Indeed, Linda inserted defendant into the conversation, making her statements self-motivated. Therefore, Linda responding in general that defendant improperly touched her does not negate the spontaneous requirement. We conclude the motion judge mistakenly exercised his discretion when he ruled that statements made by Linda during the first conversation with her parents was not spontaneous but may have been coercive. Based on this clear error of judgment, we vacate the judge's ruling as to this first conversation; on remand, the trial judge shall enter an order permitting the State to introduce statements made by Linda to her parents during their first conversation, pursuant to the fresh complaint doctrine.

Turning to the second statement, the motion judge found it was not spontaneous and was coercive. We agree. Linda's parents initiated the conversation with the specific intent to gain an understanding of the facts surrounding the sexual assault. Like J.S., where the victim was passive and the mother asked targeted questions, here, Linda was reluctant to answer so her parents pressed her on specific details. The State's arguments to the contrary clearly lack merit. Based on the timing and circumstances of the second

13

discussion, including the parent's goals in initiating it, we agree the conversation was coercive. The record clearly reflects the second statement was neither spontaneous nor voluntary. We therefore affirm the motion judge's ruling that statements made by Linda to her parents during their second conversation are not admissible under the fresh complaint exception.

In conclusion, we affirm that portion of the order under review that ruled the State could not admit Linda's second statement to her parents as fresh complaint evidence, and we vacate that portion of the order that ruled the State could not admit Linda's first statement to her parents as fresh complaint evidence. On remand, the Law Division shall enter a confirming order regarding the admissibility of Linda's statements to her parents made during their first conversation.

Affirmed in part, and vacated and remanded, in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0217-19T4