# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2904-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

A.V.,[1]

     Defendant-Appellant.

_____

Argued September 16, 2025 – Decided October 2, 2025

Before Judges Gilson and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 21-05-0409.

Zachary G. Markarian, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Zachary G. Markarian, of counsel and on the brief).

Hudson E. Knight, Assistant Prosecutor, argued the cause for respondent (Yolanda Ciccone, Middlesex

---

[1] We use initials to protect the privacy of the victim. See R. 1:38-3(c)(9), (12).

County Prosecutor, attorney; Hudson E. Knight, of counsel and on the brief).

PER CURIAM

After a jury trial, defendant A.V. appeals from convictions for sexual assault and endangering the welfare of a child. Defendant challenges the court's: admission of fresh-complaint evidence; jury instructions; refusal to charge a lesser-included offense; and sentence imposed. Having reviewed the record, parties' arguments, and applicable law, we reverse and remand.

I.

We recount the salient facts adduced at the motion hearing and trial as pertinent to defendant's issues on appeal. A jury convicted defendant of sexually assaulting and endangering the welfare of J.P. During the relevant time, J.P. resided with her mother, A.M.P. Defendant was "like an uncle" to J.P. He had dated and fathered a child with A.M.P.'s sister. Defendant watched J.P. and her two cousins, A.P.F. and C.V., "almost every weekend" from when J.P. was about seven years old until she was about nine years old. Defendant resided and watched the children in the basement of his younger brother J.V.'s home, where defendant's parents also lived.

In January 2020, J.P. disclosed sexual abuse allegations against defendant to A.P.F. and A.M.P. On February 3, J.P. and her mother gave Middlesex

2

County Prosecutor's Office (MCPO) and Perth Amboy Police Department detectives audio-recorded statements regarding defendant's sexual abuse of J.P. On February 5, the detectives obtained a statement from A.P.F. On February 20, the detectives conducted a telephonic consensual intercept between J.P. and defendant.[2]

In March 2020, defendant was charged with offenses related to his sexual assault of J.P. and A.P.F. and was arrested in North Carolina, where he was residing. In May 2021, a Middlesex County grand jury indicted defendant, charging him with: first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (count one); second-degree sexual assault, N.J.S.A. 2C:14-2(b) (count two); and two counts of second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1) (2018) (counts three and four). Counts one through three related to J.P., and count four related to A.P.F.

On May 27, 2022, the State moved to admit J.P.'s January 2020 statements to A.P.F. and A.M.P. under the fresh-complaint exception to the hearsay rule. Defense counsel argued the motion judge should not admit A.P.F.'s or A.M.P.'s testimony regarding J.P.'s complaints made "about 7 to 10 years" after the

---

[2] N.J.S.A. 2A:156A-4(c) (stating "[i]t shall not be unlawful" for "[a]ny person acting at the direction of an investigative or law enforcement officer to intercept . . . oral communication[] where such person is a party to the communication").

incidents, and specifically to A.M.P., the same day she went to police. At argument, defense counsel accepted "that one of the[] two witnesses . . . [wa]s going to come in" but argued "put[ting] two people up to tell what [J.P.]" told them would simply be bolstering her credibility and enhancing the claims made in her story simply by the presence of another person repeating the victims' claims.

On August 24, 2022, after a N.J.R.E. 104 hearing where A.P.F. and A.M.P. relayed the circumstances of J.P.'s disclosures, the motion judge granted the State's application to admit their fresh-complaint testimony "limited only to the facts that [we]re minimally necessary to identify the subject matter of th[e] allegations." The motion judge reasoned: A.P.F. and A.M.P. "were credible"; and the testimony was not "intended to corroborate the victim's allegations"; and J.P. "was a young kid trying to live the life of a young kid, and probably did not realize the significance of it until later in life when she was more mature." The motion judge also granted the State's uncontested application to admit the February 2020 consensual intercept conversation of defendant's statements.

A different court presided over the jury trial held from October 11 to October 13, 2023. The State's witnesses were: J.P., A.P.F., A.M.P., and the

investigating MCPO detective. Defendant elected not to testify but called his brother and his biological niece, C.V., to testify.

J.P. testified defendant sexually assaulted her "almost every weekend" he watched her. Defendant would "come over and pull down [her] pants" while she was "asleep on his bed." He "touched [her] vagina . . . . lips" with "his fingers" over and under her underwear. J.P. recalled that defendant "licked [her] vagina" while her underwear was off. She also relayed he "touched [her] chest" over her clothing. The sexual encounters lasted "maybe a minute or two" and would occur "sometimes [with her cousins] lying right beside [her] in [defendant's] bed." She recalled defendant also "watched porn," which she described as "sexual intercourse on video," "a handful of times" when he thought they were sleeping.

J.P. explained she was in second and third grade when defendant assaulted her, and she would "stay quiet" during each incident. J.P. stated, she "knew it was wrong," and the assaults were "uncomfortable." She did not report defendant's sexual assaults because she "was scared" and did not want her mother "to blame herself."

At trial, A.P.F. testified that she was "very close" with J.P. In January 2020, J.P. called A.P.F. and explained that defendant "used to do stuff to [J.P.]."

A-2904-23

A.P.F. testified J.P. also text messaged her in January 2020 regarding the sexual assaults that occurred "while [J.P.] was a kid, when [they] used to go to his house." J.P. was about seventeen when she told A.P.F. On cross-examination, A.P.F. acknowledged she "never observed any type of inappropriate sexual conduct or contact between [defendant] and [J.P.]." A.P.F. explained that she "encouraged [J.P.] to tell her mom."

A.M.P. testified that on January 20, 2020, defendant attempted to contact J.P. for her birthday. She explained that when J.P. did not respond to defendant, A.M.P. "yell[ed] at" J.P. to be polite and answer defendant, prompting J.P. to disclose defendant's sexual abuse. Specifically, A.M.P. testified that J.P. revealed defendant "sexually abus[ed] her for a long time," and J.P. "never [previously] told [A.M.P.] because [she] did[ not] know it was wrong." A.M.P. acknowledged she never witnessed defendant act inappropriately and, after J.P.'s disclosure, they "went straight to the police."

At trial, the State played for the jury the recording of the consensual intercept call between J.P. and defendant, which "lasted for an hour and 51 minutes." During the conversation, J.P. asked defendant why he took her pants off, and he stated he could not "explain it" and did not "know what happened . . . . the one time." Defendant contended he pulled her pants down "once, only

6

one time," and it was "maybe a minute, maybe 30 seconds." Defendant admitted "he touched" J.P.'s vagina but maintained he did not "lick" her vagina. J.P. told defendant she recalled "pretending to . . . be asleep" and feeling him "licking" her vagina, which defendant denied because he did not "like it." Defendant offered that "maybe . . . he went to [do] it but then . . . stopped." J.P. asserted she "felt [defendant] licking" and questioned whether it was her vagina or "something else?" Defendant suggested, "Your stomach?" J.P. asked, "Well, was it both?" Defendant replied, "Stomach, stomach maybe?" Defendant later admitted to "licking [her] stomach . . . . while [her] pants were down." J.P. asked him again whether he licked her vagina, and defendant responded that if he was "a hundred percent sure, [he] would tell [her,] but" he was "not a hundred percent [sure]."

J.P. also told defendant during the call that she remembered him watching porn around her and her cousins. Defendant replied, it "was not porn," but rather a "late-night channel[]" with "two sex scenes." Defendant asserted he never watched "porn . . . while [J.P. and her cousins] were sleeping," and they only saw it when using his computer because he was not computer-savvy enough to hide the websites.

7

After the State rested, defense counsel moved to dismiss defendant's charges, which the court denied. The court thereafter held a charge conference and neither party objected to the court including the fresh-complaint jury charge. After summations, the court did not give the standard fresh-complaint jury charge and instead gave the charge for lack-of-fresh complaint as follows:

> The law recognizes that stereotypes about sexual assault complaints may lead some of you to question [J.P.'s] credibility, based solely on the fact that she did not complain about the alleged abuse sooner. You may not automatically conclude [J.P.'s] testimony is untruthful based only on her silence or delayed disclosure. Rather, you may consider the silence or delayed disclosure along with all of the other evidence, including her explanation for her silence or delayed disclosure when you decide how much weight to afford her testimony.[3]

On October 13, 2023, the jury found defendant guilty of the three counts related to J.P. On March 15, 2024, the court sentenced defendant. The court found aggravating factors: two, N.J.S.A. 2C:44-1(a)(2) (gravity and seriousness

---

[3] We note the Supreme Court addressed the "lack-of-fresh-complaint" jury charge in State v. P.H., 178 N.J. 378, 400 (2004), and determined that the word "automatically" was to be reviewed for the substitution of the words "may or may not conclude that" and referred "the issue" to "the Model Jury Charges (Criminal) Committee." State v. W.B., 205 N.J. 588, 621-22 (2011); see also Model Jury Charges (Criminal), "Fresh Complaint: Silence or Failure to Complain," at 1 n.2 (rev. Apr. 15, 2013) (revising charge (citing W.B., 205 N.J. at 621-22)). It appears the court provided the earlier, unrevised "lack-of-fresh-complaint" charge.

of harm inflicted on the victim); three, N.J.S.A. 2C:44-1(a)(3) (risk of reoffending); four, N.J.S.A. 2C:44-1(a)(4) (breach of the public trust); and nine, N.J.S.A. 2C:44-1(a)(9) (need for deterrence). It gave "very little weight" to mitigating factor seven, N.J.S.A. 2C:44-1(b)(7) (no prior history of criminal activity). The court found defendant was "someone who ha[d] shown . . . that the aggravating factors, not just quantitative[ly] but qualitatively, outweigh[ed] the mitigating factors."

After addressing the Yarbough[4] factors, the court ordered consecutive sentences for each count, finding there were "different allegations and different time frames." The court further reasoned that the "series of sexual assault[s] committed over the span of several months are distinct, criminal acts, even if similar, and each identifiable incident can be subject to punishment." It sentenced defendant to an aggregate thirty-five-year prison term. The aggregate term consisted of a: seventeen-year prison term on count one, subject to an eighty-five percent period of parole ineligibility under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2; a nine-year prison term on count two, subject to NERA, to run consecutively with count one; and a nine-year prison term on count three to run consecutively with counts one and two. The court also ordered

---

[4] State v. Yarbough, 100 N.J. 627, 644 (1985).

defendant was subject to: Megan's Law, N.J.S.A. 2C:7-2; parole supervision for life, N.J.S.A. 2C:43-6.4; and Nicole's Law, N.J.S.A. 2C:14-12. The court imposed requisite fines and penalties.

On appeal, defendant argues:

POINT I

THE COURT ERRED IN ADMITTING STATEMENTS J.P. MADE OVER SEVEN YEARS AFTER THE ALLEGED ABUSE AS "FRESH COMPLAINT" EVIDENCE AND FAILING TO INSTRUCT THE JURY THAT SUCH EVIDENCE COULD NOT BE CONSIDERED FOR ITS TRUTH OR TO BOLSTER J.P.'S TRIAL TESTIMONY.

    A.    J.P.'s Statements Should Not Have Been Admitted as Fresh Complaint Because Statements Made Over Seven Years Later Have Never been Held to Be Made Within a "Reasonable Time" and Statements Made Immediately Before a Report to Police Cannot Serve the Narrow Purpose of the Fresh Complaint Exception.

    B.    The Trial Court Erred in Failing to Charge the Jury that It Could Not Consider A.P.F.['s] and A.M.P.'s Testimony About J.P.'s Disclosures for Its Truth or to Bolser J.P.'s Credibility.

POINT II

THE COURT ERRED IN ADMITTING WITHOUT ANY LIMITING INSTRUCTION J.P.'S MANY HEARSAY STATEMENTS THROUGHOUT THE

10

CONSENSUAL INTERCEPT, IN WHICH SHE INSISTED THAT SHE "REMEMBERED" THE ABUSE, "WOULDN'T SIT HERE AND LIE," AND "WOULDN'T BE MAKING THIS STUFF UP."

POINT III

THE TRIAL COURT ERRED IN REFUSING TO CHARGE THE LESSER-INCLUDED OFFENSE OF HARASSMENT BY OFFENSIVE TOUCHING.

POINT IV

THE CUMULATIVE EFFECT OF THE LEGAL ERRORS DENIED A.V. A FAIR TRIAL.

POINT V

RESENTENCING IS REQUIRED BECAUSE THE COURT USED AN UNAUTHORIZED FORMULA TO ARRIVE AT A SENTENCE ON THE FIRST-DEGREE SEX ASSAULT CONVICTION AND FAILED TO PERFORM A COMPLETE YARBOUGH ANALYSIS IN RUNNING ALL THREE SENTENCES CONSECUTIVE.

    A.    The Court Set a Seventeen-Year Sentence on Count One Based on Unauthorized Considerations and Unsupported Factfinding.

    B.    The Court Failed to Conduct A Complete Yarbough/Torres[5] Analysis When Deciding To Run All Three Sentences Consecutive.

---

5  State v. Torres, 246 N.J. 246 (2021).

## II.

Before addressing defendant's contentions, we acknowledge the legal principles governing this appeal. "We ordinarily will not disturb the trial court's factual findings unless they are 'so clearly mistaken "that the interests of justice demand intervention and correction."'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). We defer to the court's evidentiary rulings unless they were "so wide of the mark that a manifest denial of justice resulted." State v. Gonzalez, 249 N.J. 612, 633 (2022) (quoting State v. Singh, 245 N.J. 1, 13 (2021)) (internal quotation marks omitted). If we determine the court mistakenly exercised its discretion, "we must then determine whether any error found is harmless or requires reversal." Ibid. (quoting State v. Prall, 231 N.J. 567, 581 (2018)). We, however, review a trial court's legal conclusions de novo. State v. Hubbard, 222 N.J. 249, 263 (2015).

Generally, a party's "failure to 'object or otherwise preserve an issue for appeal at the trial court level' limits appellate review to a plain error inquiry." State v. G.E.P., 243 N.J. 362, 389 (2020) (quoting State v. Santamaria, 236 N.J. 390, 404 (2019)). Plain errors are those "clearly capable of producing an unjust result." R. 2:10-2. Demonstrating plain error "is a 'high bar,' . . . requiring reversal only where the possibility of an injustice is 'real' and 'sufficient to raise

12

a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached.'" State v. Alessi, 240 N.J. 501, 527 (2020) (first quoting Santamaria, 236 N.J. at 404; and then quoting State v. Macon, 57 N.J. 325, 336 (1971)).

Further, when a party objects to an alleged error, preserving an issue for appellate review, we examine under "'harmful error'—'whether in all the circumstances there [is] a reasonable doubt as to whether the error denied a fair trial and a fair decision on the merits.'" G.E.P., 243 N.J. at 389 (alteration in original) (quoting State v. Mohammed, 226 N.J. 71, 86-87 (2016)). The harmless error standard "requires that there be 'some degree of possibility that [the error] led to an unjust result. The possibility must be real, one sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached.'" State v. R.B., 183 N.J. 308, 330 (2005) (alterations in original) (quoting State v. Bankston, 63 N.J. 263, 273 (1973)).

## III.

We first review defendant's contention that the trial court erred in admitting J.P.'s disclosures to A.P.F. and A.M.P. regarding defendant's sexual assaults over six years after the last incident, which the motion judge determined were admissible under the fresh-complaint doctrine. Defendant argues J.P.'s

statements were inadmissible hearsay because they did not satisfy the fresh-complaint doctrine's purpose of explaining and dispelling her silence.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." State v. Medina, 242 N.J. 397, 421-22 (2020) (emphasis omitted) (quoting N.J.R.E. 801(c)). "Hearsay is generally inadmissible 'except as provided by [the Rules of Evidence] or by other law.'" Prall, 231 N.J. at 585 (alteration in original) (quoting N.J.R.E. 802). Therefore, "a third party's testimony about a victim's out-of-court description of an alleged sexual assault is inadmissible hearsay evidence." State v. C.W.H., 465 N.J. Super. 574, 599 (App. Div. 2021). "However, the fresh-complaint doctrine is a common law exception to this rule that 'allows witnesses in a criminal trial to testify to a victim's complaint of sexual assault.'" Ibid. (quoting State v. Hill, 121 N.J. 150, 151 (1990)).

The fresh-complaint doctrine's purpose is to permit "the admission of evidence of a victim's complaint of sexual abuse, otherwise inadmissible as hearsay, to negate the inference that the victim's initial silence or delay indicates that the charge is fabricated." Ibid. (quoting State v. R.K., 220 N.J. 444, 455 (2015)). "[F]resh-complaint evidence serves a narrow purpose" of permitting

A-2904-23

"the State to negate the inference that the victim was not sexually assaulted because of [his or her] silence." Hill, 121 N.J. at 163.

"[T]o qualify as fresh-complaint evidence, the victim's statement must have been made spontaneously and voluntarily, within a reasonable time after the alleged assault, to a person the victim would ordinarily turn to for support." C.W.H., 465 N.J. Super. at 599 (alteration in original) (quoting R.K., 220 N.J. at 455). "Flexible application of the doctrine to children's complaints is recognized as a necessity since children are especially vulnerable to being cajoled or coerced by their abusers into remaining silent; they may be too frightened or embarrassed to reveal the abuse." State v. Pillar, 359 N.J. Super. 249, 282 (App. Div. 2003); see also State v. L.P., 352 N.J. Super. 369, 384 (App. Div. 2002) (relying on the "continuing aura of intimidation" in determining statements were made within a reasonable time). Where there are multiple instances of assault, the reasonableness of the timing of disclosure is measured from the last date of an assault. See W.B., 205 N.J. at 617. Whether a victim voiced a complaint within a reasonable period after a sexual assault must be decided on a case-by-case basis with the court "[s]triking the appropriate balance between a defendant's right to confrontation and society's interest in adjudicatory reliability." P.H., 178 N.J. at 390.

A-2904-23

In the present matter, we note defendant does not contest that J.P. "would ordinarily turn to" A.P.F. and A.M.P. "for support," or that J.P. made her disclosures "spontaneously and voluntarily." Defendant argues the admissibility of A.P.F.'s and A.M.P.'s testimony under the fresh-complaint doctrine hinges on whether J.P. made her disclosures within a reasonable time based on the circumstances.

It is undisputed that J.P. first disclosed defendant's sexual abuse to A.P.F. and A.M.P. in January 2020—over six years after the last assault occurred. We have previously held that fresh-complaint testimony based on a victim's disclosure six years after the last sexual assault, which occurred when the victim was thirteen years old, was inadmissible "in light of the timing and circumstances." Pillar, 359 N.J. Super. at 285. While we have recognized a victim's disclosure several years after the assault was not within a reasonable time, we have held that a three-year delay was reasonable because the victim's sexual abuse disclosure was made within weeks of leaving defendant's sphere of intimidation where they resided together in a foster home. State v. Hummel, 132 N.J. Super. 412, 423 (App. Div. 1975). Those differentiating and special circumstances are absent here.

Relevantly, there is no evidence that J.P. was threatened, coerced, or under

16

defendant's "continuing aura of intimidation." L.P., 352 N.J. Super. at 374. Prior to J.P.'s disclosures in January 2020, defendant had resided in a different state for almost "three years," and she had not seen him for many months. J.P.'s statements were inadmissible fresh-complaint evidence because she: had disclosed defendant's offenses to A.P.F. and A.M.P. several years after the last sexual assault; was not under an established sphere of intimidation; and revealed the incidents only a short time before reporting defendant's abuse to the police. The court's admission of the fresh-complaint evidence was clearly capable of producing an unjust result because it was not offered to negate an inference that J.P. failed to inform anyone about the assaults.

We next address defendant's contention that the probative value of J.P.'s admitted disclosures to A.P.F. and A.M.P. was outweighed by the risk of undue prejudice. Pursuant to N.J.R.E. 403, relevant evidence may "be excluded if its probative value is substantially outweighed by the risk of . . . undue prejudice, confusion of issues, or misleading the jury." Consistent with the limited purpose of fresh-complaint testimony, a victim's disclosures are "not to be used 'to corroborate the victim's allegations concerning the crime.'" R.K., 220 N.J. at 456 (quoting State v. Bethune, 121 N.J. 137, 146 (1990)). Because fresh-complaint evidence cannot be used to bolster the victim's credibility, trial courts

A-2904-23

may "exclude cumulative fresh-complaint testimony that is prejudicial." Hill, 121 N.J. at 170. Based on the facts of this case, the probative value of J.P.'s disclosures was outweighed by the risk of undue prejudice.

While we have discerned the admission of J.P.'s disclosures as fresh-complaint evidence warrants reversal, for the sake of completeness, we address defendant's alternative arguments regarding the court's failure to properly charge the jury. Defendant argues reversal is also warranted because the court failed to provide the fresh-complaint model jury charge, which would have included the jury instruction that J.P.'s disclosures to A.P.F. and A.M.P. may only be considered to negate the inference that J.P. failed to inform anyone about the sexual abuse. We note the State in opposition argues reversal is not warranted because "the scope of the fresh[-]complaint testimony was narrowed" so that any admission error was harmless, and thus, the erroneous jury instruction was not "error that had a clear capacity to bring about an unjust result."

Challenges to jury instructions raise issues "of law, and our review is de novo." State v. O'Carroll, 385 N.J. Super. 211, 225 (App. Div. 2006). Courts consider the following factors in reviewing an alleged jury charge error:

> (1) the nature of the error and its materiality to the jury's deliberations . . . ; (2) the strength of the evidence against the defendant . . . ; (3) whether the potential for prejudice was exacerbated or diminished by the

arguments of counsel . . . ; (4) whether any questions from the jury revealed a need for clarification . . . ; and (5) the significance to be given to the absence of an objection to the charge at trial.

[State v. Docaj, 407 N.J. Super. 352, 365-66 (App. Div. 2009).]

Because defendant did not object to the court's fresh-complaint jury instruction or propose an alternative jury instruction, we apply the plain error standard of review. See State v. Cooper, 256 N.J. 593, 607 (2024); see also G.E.P., 243 N.J. at 389. Even under a plain error standard, "erroneous instructions on material issues are presumed to be reversible error." State v. Fortin, 178 N.J. 540, 626 (2004) (quoting State v. Marshall, 173 N.J. 343, 359 (2002)).

It is well-established that "[t]he only reason that the [fresh-complaint] evidence is permitted is to negate the inference that [the alleged victim] failed to confide in anyone about the sexual offense." Model Jury Charges (Criminal), "Fresh Complaint," at 1 (rev. Feb. 5, 2007). The model jury charge for fresh-complaint evidence states, in pertinent part:

A fresh-complaint is not evidence that the sexual offense actually occurred, or that [alleged victim] is credible. It merely serves to negate any inference that because of (his/her) assumed silence, the offense did not occur. It does not strengthen (his/her) credibility. It does not prove the underlying truth of the sexual offense. A fresh-complaint only dispels any negative

19

> inference that might be made from (his/her) assumed silence.
>
> . . . .
>
> . . . th[e] [fresh-complaint] testimony was permitted for a limited purpose . . . . It merely dispels any negative inference that might arise from (his/her) assumed silence.
>
> [Model Jury Charge (Criminal), "Fresh Complaint," at 2-3 (footnote omitted).]

See R.B., 183 N.J. at 325 (holding "insofar as consistent with and modified to meet the facts adduced at trial, model jury charges should be followed and read in their entirety to the jury"). The Supreme Court has elucidated that "[t]he trial court is required to charge the jury that fresh-complaint testimony is not to be considered as substantive evidence of guilt, or as bolstering the credibility of the victim; it may only be considered for the limited purpose of confirming that a complaint was made." R.K., 220 N.J. at 456. "Because of the limited nature of . . . [fresh-complaint] evidence, it is crucial for the trial court to instruct the jury on how to utilize such evidence." State v. R.E.B., 385 N.J. Super. 72, 89 (App. Div. 2006).

As the State correctly recognized in its merits brief, the court should have properly instructed the jury on fresh-complaint evidence and "made reference to the narrow purpose of the fresh[-]complaint testimony." It is undisputed that

20

the court, rather than providing the model fresh-complaint jury instruction, gave a modified version of the "lack-of-fresh-complaint charge."[6] In sum, had we determined the error in admission of J.P.'s fresh-complaint disclosure was harmless, the trial court's failure to charge the jury with the fresh-complaint instruction in this case was plain error and alone warrants reversal. See State v. Mauti, 448 N.J. Super. 275, 318 (App. Div. 2017) ("The trial court's failure to charge the jury on fresh-complaint testimony is sufficient to raise a reasonable doubt as to the reliability of the verdict.").

Because we reverse defendant's conviction and remand for a new trial, we need not address defendant's remaining arguments.

Reversed and Remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Hadey*

Clerk of the Appellate Division

---

[6] The lack-of-fresh-complaint charge is used to address a victim's delay in reporting sexual abuse. P.H., 178 N.J. at 400; Model Jury Charges (Criminal), "Fresh Complaint: Silence or Failure to Complain," at 1 n.2. But see Model Jury Charge (Criminal), "Delayed Disclosure of Child Sexual Abuse (Where State Introduces Expert Testimony)," at 1 n.1 (approved Apr. 8, 2019).

A-2904-23